**Lisa KARL, Appellant**

v.

**BRAZOS RIVER AUTHORITY, Appellee**

No. 11-13-00010-CV

Court of Appeals of Texas, Eastland.

April 23, 2015

John K. Dubiel Jr., Murray L. Bristol, Bristol & Dubiel LLP, Dallas, for Appellant.

Roy Lee Barrett, Robert Little, Neal E. Pirkle, Naman, Howell, Smith & Lee, PLLC, Waco, for Appellee.

Panel consists of: Wright, C.J., Willson, J., and Bailey, J.

## OPINION

### JOHN M. BAILEY, JUSTICE

Lisa Karl brought a premises liability action against the Brazos River Authority (Authority). The Authority is a conservation and reclamation district created by statute that is a "river authority, a governmental agency, a municipality, and a body politic and corporate." TEX. SPEC. DIST. CODE ANN. § 8502.001(a) (West Pamph. 2014). The Authority filed a plea to the jurisdiction based on the ground that Karl's claims were barred by governmental immunity. The trial court entered an order granting the Authority's plea. Karl appeals the trial court's order. Because we conclude that the recreational use statute[1] applies to Karl's claims, we affirm the trial court's order.

### Background Facts

The underlying facts in this appeal are largely uncontroverted. On July 2, 2011, Karl and her sister, Rebecca Henderson, took their five children to Possum Kingdom Lake to go swimming. Karl, Henderson, and the children were wearing swimsuits under their clothes. They had an ice chest full of drinks and snacks with them. Karl and Henderson intended to go swimming in an area called Sandy Beach. However, the group instead arrived at the North D & D Public Use Area, which was owned by the Authority. The North D & D had a swimming area and a beach area on Possum Kingdom Lake.

Karl entered the North D & D by driving her pickup through the entrance gate to the property. She drove to a gatekeeper booth on the North D & D premises. She stayed in her pickup and talked with an attendant who was working at the booth. Karl asked the attendant whether there was room at the North D & D for her and her group to swim. The attendant responded that there was room. Karl pulled her pickup closer to the booth and then parked there temporarily. She got out of the pickup and walked up a step onto a concrete slab where the booth was located. Henderson and the children waited in the vehicle. Karl paid the attendant for a day pass for her and her group to go swimming. Karl turned around to go back to her pickup. When she stepped off the slab and onto the step, she fell to the ground and broke her left ankle. Karl claimed that the step was loose and gave way when she stepped onto it.

On February 2, 2012, Karl filed a premises liability suit against the Authority. She alleged that the condition of the loose step constituted a "premises defect that posed an unreasonable risk of harm." She further alleged that she was an invitee of the Authority at the time of her injury, that the Authority breached the duty to use ordinary care by failing to reduce or eliminate the unreasonable risk of harm created by the step, and that she was injured as a result of the Authority's failure to use ordinary care.

The Authority filed a plea to the jurisdiction. The Authority asserted that, at the time of her injury, Karl was engaged in recreation as that term is defined in the recreational use statute. Therefore, the Authority argued that Karl's claims were barred by governmental immunity. The trial court held a hearing on the Authority's plea and subsequently entered an order granting the plea.

### Issues on Appeal

Karl challenges the trial court's order in two issues. In her first issue, Karl con-

---

1. TEX. CIV. PRAC. & REM. CODE ANN. §§ 75.001– .007 (West 2011 & Supp. 2014).

tends that the Texas Tort Claims Act[2] waives governmental immunity for her premises defect claims. In her second issue, Karl contends that she was not engaged in recreation at the time of her accident and that, therefore, the trial court erred in concluding that the recreational use statute applies to her claims.

### Standard of Review

"A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000). The plea challenges the trial court's subject-matter jurisdiction over a pleaded cause of action. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex.2004). If a governmental unit has immunity from a pending claim, the trial court lacks subject-matter jurisdiction as to that claim. *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex.2012). Subject-matter jurisdiction is a question of law. *Miranda*, 133 S.W.3d at 226. Therefore, we apply a de novo standard of review to a trial court's ruling on a plea to the jurisdiction. *Id.*

When a plea to the jurisdiction challenges the plaintiff's pleadings, we look to the plaintiff's intent, construe the pleadings liberally in favor of the plaintiff, and accept the allegations in the plaintiff's pleadings as true to determine whether the plaintiff has alleged sufficient facts to affirmatively demonstrate the trial court's jurisdiction to hear the case. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 149 (Tex.2012). When, as here, the plea challenges jurisdictional facts, we consider relevant evidence submitted by the parties. *Miranda*, 133 S.W.3d at 227; *Blue*, 34 S.W.3d at 555. The standard of review

applicable to a trial court's ruling on a plea to the jurisdiction "generally mirrors" the standard that applies to a traditional summary judgment under Rule 166a(c) of the Texas Rules of Civil Procedure. *Miranda*, 133 S.W.3d at 228. We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in favor of the nonmovant. *Id.*

If the evidence creates a fact question regarding the jurisdictional issue, the trial court cannot grant the plea to the jurisdiction, and the fact issue must be resolved by the factfinder. *Id.* at 227–28. "However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Id.* at 228.

### Analysis

"Sovereign immunity protects the State from lawsuits for money damages." *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex.2006). Governmental immunity provides this protection to political subdivisions of the State, such as the Authority, and it is derived from the State's sovereign immunity. *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex.2011); *see* Civ. Prac. & Rem. § 101.001(3)(B). The Texas Tort Claims Act (TTCA) provides a limited waiver of governmental immunity. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655–56 (Tex.2008); *Miranda*, 133 S.W.3d at 224. Specifically, Section 101.021 of the TTCA waives governmental immunity in three areas: (1) property damage, personal injury, and death caused by the use of publicly owned vehicles; (2) personal injury and death caused by a condition or use of tangible

---

**2.** Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001– .109 (West 2011 & Supp. 2014).

personal or real property; and (3) personal injury and death caused by premises defects. Civ. Prac. & Rem. §§ 101.021, 101.022, 101.025; *Miranda*, 133 S.W.3d at 225. In this case, Karl claims that her injury was caused by a premises defect—an allegedly loose step—on the Authority's property. Thus, Karl's premises liability claim fits within the third area of waiver listed above.

■ The TTCA provides that "if a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises." Civ. Prac. & Rem. § 101.022(a). If the claimant pays to use the premises, the governmental unit owes the claimant the duty owed to an invitee. *City of Irving v. Seppy*, 301 S.W.3d 435, 441 (Tex.App.—Dallas 2009, no pet.).

■ However, with regard to premises defect claims, Section 101.058 of the TTCA modifies a governmental unit's waiver of immunity "by imposing the limitations of liability articulated in the recreational use statute." *Miranda*, 133 S.W.3d at 225; *see* Civ. Prac. & Rem. § 101.058 ("To the extent that Chapter 75 limits the liability of a governmental unit under circumstances in which the governmental unit would be liable under [the TTCA], Chapter 75 controls."). The purpose of the recreational use statute is to encourage landowners to open their lands to the public for recreational purposes. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex.2006). The statute limits the liability of the State and others who open their land for recreational purposes. *Id.* The statute provides, in relevant part, that "if a person enters premises owned, operated, or maintained by a governmental unit and engages in *recreation* on those premises, the governmental unit does not owe to the person

a greater degree of care than is owed to a *trespasser* on the premises." Civ. Prac. & Rem. § 75.002(f) (emphasis added).

■ The recreational use statute applies if a plaintiff is engaged in "recreation" on the governmental unit's "premises" at the time of the injury. *Id.*; *City of Bellmead v. Torres*, 89 S.W.3d 611, 613–14 (Tex.2002). The statute sets forth a non-exclusive list of activities that constitute "recreation," including swimming. Civ. Prac. & Rem. § 75.001(3)(C). In determining whether a particular activity is "recreational" for purposes of the statute, the relevant inquiry is what the plaintiff was doing at the time she was injured. *Torres*, 89 S.W.3d at 614. The statute defines "premises" to include the land itself, and also "roads," "buildings," and "structures" attached to or located on the land. Civ. Prac. & Rem. § 75.001(2).

Karl contends that the recreational use statute does not apply to her claims because she never began the recreational activity of swimming. We disagree. Based on the definition of "premises" in the statute, courts have concluded that the statute contemplates "recreation" as occurring not only when a person is actively engaged in recreation but also when the person is on the "premises" and traveling to and from the recreational area. *City of Plano v. Homoky*, 294 S.W.3d 809, 817 (Tex.App.—Dallas 2009, no pet.); *Dubois v. Harris Cnty.*, 866 S.W.2d 787, 789–90 (Tex.App.—Houston [14th Dist.] 1993, no writ).

In *Homoky*, the plaintiff fell and injured herself in the clubhouse on a golf course after she played a round of golf. *Homoky*, 294 S.W.3d at 811–12. Initially, the court explained that, although golfing was not specifically listed in the statute as a recreational activity, it constituted "recreation" under the statute because it was an "activi-

ty associated with enjoying nature or the outdoors." *Id.* at 816 (quoting CIV. PRAC. & REM. § 75.001(3)(L)). Although the plaintiff was not actually playing golf when she was injured, the court concluded that she was engaged in recreation at the time of her injury. *Id.* at 817. The *Homoky* court relied on the definition of "premises" in reaching its conclusion. *Id.* at 816. The clubhouse fell within the statute's definition of "premises" because it was a structure attached to the golf course. *Id.* The court stated that "what [plaintiff] was doing when she was injured was ... related to the activity of playing golf" and, therefore, concluded that the plaintiff was engaged in recreation at the time of her injury. *Id.* at 817.

In *Dubois*, the plaintiff fell when she stepped into a hole in an area that separated park grounds from the parking area. *Dubois*, 866 S.W.2d at 789. Based on the definition of "premises" in the recreational use statute, the *Dubois* court explained that "Section 75.001 recognizes that a parking area or road would be a necessary and integral part of a recreational area." *Id.* The court concluded that the recreational use statute applied to the plaintiff's claims. *Id.* at 790.

We agree with the sound reasoning of the *Homoky* and *Dubois* courts. Thus, we conclude that a person is engaged in "recreation" under the recreational use statute when the person is on the governmental unit's premises for a recreational activity as defined in the statute and is traveling to and from the recreational area.[3] In this case, Karl drove her pickup to the gatekeeper booth. While in her pickup, she talked with the attendant and determined that there was room for her

group to swim. At that time, Karl decided to buy a day pass for her group. She moved her pickup closer to the booth, parked there temporarily, approached the booth, and then paid the attendant for the day pass. Karl headed back to her pickup to move it to another location, park it, and then go swimming with her group. However, Karl was injured when she was on her way back to her pickup.

The evidence is undisputed that Karl's injury occurred on the premises owned by the Authority. The gatekeeper booth was a "structure" and, therefore, part of the "premises" under the recreational use statute. CIV. PRAC. & REM. § 75.001(2). Likewise, the parking area was part of the "premises." *Dubois*, 866 S.W.2d at 789–90. The recreational use statute defines "recreation" to include "swimming." CIV. PRAC. & REM. § 75.001(3)(C). Karl was in the process of traveling to the recreational area on the premises when she was injured. Specifically, she had purchased the day pass, and she was walking to her pickup so that she could park it and then go swimming. Karl's conduct on the premises related to the activity of swimming. Based on the undisputed evidence, we conclude that she was engaged in recreation at the time of her injury. *See Homoky*, 294 S.W.3d at 817.

Because Karl was engaged in recreation at the time of her injury, the recreational use statute applies to her claims against the Authority. *Id.* Under the statute, the Authority owed Karl the duty owed to a trespasser. CIV. PRAC. & REM. § 75.002(f). A premises owner owes a trespasser the limited duty "not to injure that person willfully, wantonly, or through gross negligence." *Miranda*, 133 S.W.3d at 225. In

---

**3.** The dissent cites to several cases to show application of the statute when an injury occurs after a person has engaged in a recreational activity and notes that none of the cases involve injuries that occurred before the activity. We fail to see how traveling to the activity is any less, if not more, a part of the activity than traveling from it.

this case, Karl alleged a gross negligence claim but later voluntarily nonsuited the claim. In response to Karl's request, the trial court entered an order dismissing Karl's gross negligence claim. Karl has not alleged a viable claim under the recreational use statute because she has not alleged that the Authority acted willfully, wantonly, or through gross negligence. The requirements for a limited waiver of governmental immunity under the TTCA and the recreational use statute have not been met. Accordingly, the trial court lacked subject-matter jurisdiction over Karl's claims.

We conclude that the trial court did not err in granting the Authority's plea to the jurisdiction. Karl's issues on appeal are overruled.

### This Court's Ruling

We affirm the order of the trial court.

### DISSENTING OPINION

MIKE WILLSON, JUSTICE

The majority holds that Lisa Karl was engaged in activity related to "swimming," thus engaged in "swimming" and "recreation,"[1] when she fell and broke her ankle at the North D & D Public Use Area, a beach and swimming area on Possum Kingdom Lake owned by the Brazos River Authority,[2] and that the recreational use statute[3] bars her negligence claim for her injuries. I respectfully dissent because I would hold she was not engaged in recreation at the time of her injury.

### I. Background Facts

Karl and her sister, along with their children, all rode in Karl's vehicle to go swimming at Sandy Beach, but they got lost and arrived at the entrance of the North D & D Public Use Area. Karl drove up to the gatekeeper booth and asked if there was room for her group to swim. She learned there was room, so she parked her vehicle, got out of her vehicle, walked up a concrete step onto a slab where the gatekeeper booth was located, paid for a day pass for all, and learned of beach and swim areas appropriate for her small children. But Karl never got to the swim area: as she left the booth and stepped onto the same concrete step that she had previously gone up, the step gave way, and she fell and broke her ankle.

### II. Discussion and Analysis

I agree with the majority's analysis that Karl was on the premises of the Authority's recreation area, which only leaves the issue of whether she was engaged in recreation when she fell.[4] As I explain below, I would hold the answer is "no."

### A. History and Purpose of the Recreational Use Statute

In 1965, the recreational use statute began with an original purpose to keep private land open for hunting, fishing, and camping; however, in 1981, hunting, fish-

---

1. Tex. Civ. Prac. & REM. Code Ann. § 75.001(3) (West 2011).

2. The Authority is a conservation and reclamation district created by statute that is a "river authority, a governmental agency, a municipality, and a body politic and corporate." TEX. SPEC. DIST. CODE ANN. § 8502.001(a) (West Pamph.2014).

3. CIV. PRAC. & REM. § 75.001(3).

4. Section 101.058 of the Texas Tort Claims Act provides that Chapter 75 controls over the Texas Tort Claims Act. CIV. PRAC. & REM. § 101.058; Texas Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 225 (Tex.2004). The recreational use statute applies if a plaintiff is engaged in "recreation" on the governmental unit's "premises" at the time of the injury. CIV. PRAC. & REM. § 75.002(f).

ing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, and water sports were added, and the purpose broadened to encourage owners to open more land for such uses.[5] *Univ. of Tex. at Arlington v. Williams*, No. 13–0338, 459 S.W.3d 48, 52, 2015 WL 1285317, at *4 (Tex. Mar. 20, 2015).[6]

> But the Legislature did not provide that the statute was to cover recreation generally but rather defined the term through section 75.001(3)'s list of included activities. And although the Legislature has broadened the statute's reach over the years, it has not made it generally applicable to all refreshing, relaxing, or enjoyable activities. "Recreation" under the statute has remained more specific than the word's ordinary meaning.

*Id.*

**B. *Homoky* and *Dubois* are Distinguishable**

The majority relies on *Homoky* and *Dubois* for holding that Karl was engaged in recreation as she walked to her vehicle. *City of Plano v. Homoky*, 294 S.W.3d 809, 816–17 (Tex.App.–Dallas 2009, no pet.); *Dubois v. Harris Cnty.*, 866 S.W.2d 787, 789 (Tex.App.–Houston [14th Dist.] 1993, no writ). In *Homoky*, the court held that a woman, who injured herself as she left the clubhouse on a golf course after she had completed a round of golf, was engaged in recreation. *Homoky*, 294 S.W.3d at 816–17. In *Dubois*, the court held that a woman who stepped into a hole that was left after the extraction of a dome post was engaged in recreation. *Dubois*, 866 S.W.2d at 789. The dome posts were used to separate the park's parking area from the park. *Id.* In *Homoky*, the injury occurred *after* the plaintiff had already played golf; her exit from the clubhouse was an activity that was construed under the "catchall" provision of Section 75.001(3) to be related to her participation in the unenumerated activity of golf.[7] *Homoky*,

5. Later, in 1995, the legislature added public land and, in 1997, added "bird-watching" and a "catchall" provision that provided "any other activity associated with enjoying nature or the outdoors." CIV. PRAC. & REM. § 75.001(3); *Williams*, 459 S.W.3d at 52–54, 2015 WL 1285317, at *4–5. In 2005, bicycling and mountain biking, disc golf, dog walking, off-road motorcycling, off-road automobile driving, and the use of allterrain vehicles, as part of the pleasure-driving category, were added. CIV. PRAC. & REM. § 75.001(3); *Williams*, 459 S.W.3d at 53, 2015 WL 1285317, at *5. Radio-controlled flying and related activities were added in 2007. CIV. PRAC. & REM. § 75.001(3); *Williams*, 459 S.W.3d at 53, 2015 WL 1285317, at *5. Hockey, in-line hockey, skating, inline skating, skateboarding, roller-blading, soap box derby use, and paintball use also are enumerated activities for recreation on the premises of governmental units. CIV. PRAC. & REM. § 75.002(e).

6. The recreational use statute protects landowners who open property for recreational purposes, limiting their liability to the recreational user. CIV. PRAC. & REM. § 75.002; *Williams*, 459 S.W.3d at 50, 2015 WL 1285317, at *2. The statute accomplishes this by elevating the burden of proof in premises defect cases in which it applies; plaintiffs who are engaged in recreation and are injured may sue only for gross negligence. CIV. PRAC. & REM. § 75.002(f); *Williams*, 459 S.W.3d at 50–51, 2015 WL 1285317, at *2; *State v. Shumake*, 199 S.W.3d 279, 284 (Tex.2006).

7. Two other cases, *City of Bellmead* and *Martinez*, are also distinguishable because they do not deal with enumerated activities but, instead, concerned whether an activity fell within the ambit of the "catchall" provision of "activity associated with enjoying nature or the outdoors." *City of Bellmead v. Torres*, 89 S.W.3d 611, 615 (Tex.2002); *Martinez v. Harris Cnty.*, 808 S.W.2d 257, 259 (Tex.App.–Houston [1st Dist.] 1991, writ denied). The majority does not rely on the "catchall" provision but limits its analysis to the enumerated

294 S.W.3d at 816–17. *In Dubois,* the court noted that the plaintiff frequently took walks on the nature trail and that she was walking when she was injured. *Dubois,* 866 S.W.2d at 789. However, no facts were given about *when* the plaintiff was injured. *See id.* Neither *Homoky* nor *Dubois* involved someone who was injured *before* he or she had engaged in an enumerated activity.

*Homoky* cited to and referred to *Rule,* which in turn cited to and referred to *Flye,* in support of the *Homoky* court's analysis that activity "to and from" a recreational area is "recreation." *Homoky,* 294 S.W.3d at 816; *see City of Lubbock v. Rule,* 68 S.W.3d 853, 858–60 (Tex.App.–Amarillo 2002, no pet.); *Flye v. City of Waco,* 50 S.W.3d 645, 646 (Tex.App.–Waco 2001, no pet.). In *Rule,* a child suffered burns from a slide in a park when she attempted to climb the slide. *Rule,* 68 S.W.3d at 858. The *Rule* court held she was engaged in recreation when she suffered injury after she touched a slide that had become hot because a protective covering had worn off the slide; the court ruled that being on a slide in the park was closely related to activities one engaged in at a playground

or park. *Id.* In *Flye,* a child suffered injury when a swing hit him in the head. *Flye,* 50 S.W.3d at 647. The child had just pushed someone on the swing, and the child slipped and fell just before he was struck by the swing. *Id.* But the plaintiff in *Flye* conceded that the child's activity was encompassed by the recreational use statute. *Id.*

Neither *Rule* nor *Flye* involved injuries that occurred when the injured party was "en route" to a recreation area; in both cases, the injured party was already on the premises. In *Rule,* the court held that the injured party had engaged in an unenumerated activity that was within the ambit of "activity associated with enjoying nature or the outdoors," a provision of the statute that is not relied upon by the majority in this case.[8] *Rule,* 68 S.W.3d at 858; CIV. PRAC. & REM. § 75.001(3)(L). In *Flye,* the plaintiff conceded that the activity was recreation covered by the statute. *Flye,* 50 S.W.3d at 647. There are several other cases that involve a plaintiff who suffered injury by an act *that followed* the plaintiff's engagement in either an enumerated activity or one within the "catchall" provision.[9] But, just as in *Homoky* and *Dubois,*

---

activity of swimming. *See* CIV. PRAC. & REM. § 75.001(3)(C), (L).

**8.** *See* Footnote No. 7.

**9.** *Stephen F. Austin State Univ. v. Flynn,* 228 S.W.3d 653, 655 (Tex.2007) (injured plaintiff was engaged in recreation, under Section 75.001(3)(M) (biking), when she fell off bike on trail, after being hit by water from a sprinkler); *City of Corpus Christi v. Ferguson,* No. 13–12–00679–CV, 2014 WL 495146, at *5 (Tex.App.–Corpus Christi Feb. 6, 2014, no pet.) (injured plaintiff was engaged in recreation, under Section 75.001(3)(D) (boating), when she walked back from marina showers after spending night on boat); *City of Dallas v. Patrick,* 347 S.W.3d 452, 457 (Tex.App.–Dallas 2011, no pet.) (injured woman was engaged in recreation, under Section

75.001(3)(I) (nature study), after she entered zoo and saw exhibits with children for nature study); *Univ. of Texas Health Sci. Ctr. at Houston v. Garcia,* 346 S.W.3d 220, 226–27 (Tex.App.–Houston [14th Dist.] 2011, no pet.) (injured plaintiff was engaged in recreation, under Section 75.001(3)(L) (catchall), when he played beach volleyball on outdoor sand court); *City of Dallas v. Hughes,* 344 S.W.3d 549, 560–61 (Tex.App.–Dallas 2011, no pet.) (injured plaintiff was engaged in recreation, under Section 75.001(3)(M) (biking), when he rode bike on hiking and biking trail and fell because of buckled or displaced boards on a bridge on the path); *City of San Antonio v. Vasquez,* 340 S.W.3d 844, 846 (Tex.App.–San Antonio 2011, no pet.) (injured plaintiffs were engaged in recreation, under Section 75.001(3)(M) (biking), when they rode bicycle on bike path); *City of Fort Worth v. Crockett,* 142 S.W.3d 550, 553 (Tex.App.–Fort Worth

none dealt with activity that occurred *before* the person was actually engaged in an enumerated activity.

### C. Karl's Case

As outlined in *City of Bellmead,* the relevant inquiry is "what [the plaintiff] was doing when [the plaintiff] was injured." *City of Bellmead v. Torres,* 89 S.W.3d 611, 614 (Tex.2002). Both *Homoky* and *Dubois* are distinguishable because Karl had not gone swimming before her injury. There is a difference between traveling "to" a recreation area or traveling "from" a recreation area because, in the latter, two activities occur: first the recreation activity, golfing in *Homoky,* then the second activity that results in injury. In *Homoky,* the second act was determined to be closely related to the first act. The analysis in *Dubois* is not helpful because there was no discussion of *when* the injury took place and because the plaintiff was engaged in the same enumerated activity, hiking, that she engaged in on the nature trail.

At the time of her injury, Karl had not swum or even been near the water and had only engaged in one activity: she stepped on a step. The majority notes that she paid for the day pass and that she was headed to her vehicle to go to the swimming area, after she moved her vehicle, but neither her payment of the pass nor the inference of her intentions, before or after she purchased the pass, is a proper part of the "recreation" analysis. *See* Civ. Prac. & Rem. § 75.003(c) (West Supp. 2014); *Tex. Dep't of Parks & Wildlife v.*

*Miranda,* 133 S.W.3d 217, 225 (Tex.2004) (fee not an issue); *City of Bellmead,* 89 S.W.3d at 614 (intent not relevant). In addition, the majority does not hold that Karl was engaged in recreation when she went up the step, and the majority does not explain why going down a step is different than going up one. A logical extension of the majority's analysis would be that, once anyone enters any public recreational area and exits a vehicle, he or she would be engaged in recreation; such an extension would go beyond the statute's purpose to cover only specific activities, not recreation generally. *See Williams,* 459 S.W.3d at 52–53, 2015 WL 1285317, at *4. I would hold that Karl was not engaged in recreation when she stepped off the concrete slab onto the concrete step because that activity is neither swimming nor an activity related in any way to swimming.

### III. Conclusion

In his concurrence in *Williams,* Justice Boyd compared defining what constitutes "recreation" to untying Midas's "Gordian Knot." [10] As the majority and I have grappled with the knot, we have reached different conclusions. Because I would hold that Karl was not engaged in recreation, I respectfully dissent and would reverse the judgment of the trial court and remand the cause.

---

2004, pet. denied) (injured plaintiff was engaged in recreation, under Section 75.001(3)(M) (biking), when he rode bike on biking and running path); *State ex rel. Tex. Dep't of Parks & Wildlife v. Shumake,* 131 S.W.3d 66, 80 (Tex.App.–Austin 2003), aff'd *sub nom. State v. Shumake,* 199 S.W.3d 279 (Tex.2006) (decedent was engaged in recreation, under Section 75.001(3)(C) (swimming), when she drowned while swimming

and tubing on river); *Garcia v. City of Richardson,* No. 05–01–01755–CV, 2002 WL 1752219, at *2 (Tex.App.–Dallas July 30, 2002, pet. denied) (injured plaintiff, who attended picnic and was injured while playing soccer, was engaged in recreation under Section 75.001(3)(F) (picnicking)).

10. *Williams,* 459 S.W.3d at 60, 2015 WL 1285317, at *11.